UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

KAREN CAMPBELL,

                  Plaintiff,

      V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                 Defendant.

———————————————————————————

**REPORT AND
RECOMMENDATION**

07-CV-758
(NAM/VEB)

## I. INTRODUCTION

In October of 2003, Plaintiff Karen Campbell filed an application for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that she has been unable to work since May 29, 2003, primarily due to depression and anxiety.  Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorney, Stephen Baker, Esq., of the Legal Aid Society of Northeastern New York, Inc., commenced this action on July 23, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 31, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 14).

For the reasons set forth below, the Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for DIB and SSI benefits on October 20, 2003[1], alleging that she had been unable to work since May 29, 2003.  (T[2] at 103-131).  The application was denied on March 31, 2004.  (T at 69-73).  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 21, 2004. (T at 77-78).  On February 15, 2005, Plaintiff appeared with counsel at a hearing before ALJ Carl Stephan.  (T at 45-67).

On April 25, 2005, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 90-95).  On June 24, 2005, Plaintiff requested review of the unfavorable decision by the Social Security Administration's Appeals Council.  (T at 96-99). On August 25, 2005, the Appeals Council granted the review and vacated the ALJ's decision, remanding for further development of the record with respect to vocational evidence.  (T at 12, 100-102).  A second hearing was held on January 23, 2007.  (T at 18).

On February 21, 2007, a second unfavorable decision was issued by the ALJ.  (T at 12-17).  On April 27, 2007, Plaintiff made a request to review the unfavorable decision.  (T at 381).  ALJ Stephan's decision became the Commissioner's final decision on May 24,

---

[1]The ALJ lists the date of filing as October 2, 2003 (T at 12), and the Commissioner, in his papers, lists the date of filing as October 23, 2003 (Docket No. 13).  However, it appears from the record, as well as Plaintiff's Brief, that the actual date of filing was October 20, 2003.  (T at 103-131).

[2]Citations to "T" refer to the Administrative Transcript.  (Docket No.10).

2007, when the Appeals Council denied Plaintiff's request for review.  (T at 5-8).

Plaintiff commenced this action on July 23, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on June 12, 2008. (Docket No. 12).  The Commissioner filed a Brief in opposition on July 25, 2008. (Docket No. 13).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *see Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir.1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and

---

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan,* 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs*, 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in *Bowen v. Yuckert*, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. *See Bowen*, 482 U.S. at 146 n. 5; *Ferraris v. Heckler*, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); *Heckler v.*

*Campbell*, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

**1.    Commissioner's Decision**

On remand, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since May 29, 2003. (T at 13). Although the ALJ found that Plaintiff had established that she suffers from severe mental impairments, he determined that the impairments failed to meet or equal the level of severity of any disabling disorder identified in Appendix 1, Subpart P of the Social Security Regulations, commonly referred to as the "Listings."

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to perform "simple low stress work activity at any exertional level subject to occasional problems understanding and executing detailed instructions, exercising judgment, interacting with others, dealing with work stresses and responding to changes in a work setting." (T at 14).

The ALJ concluded that Plaintiff could not perform her past relevant work as a cashier and home health aide, due to her limited capacity to understand and execute detailed instructions and her inability to interact with others.  (T at 15).  However, the ALJ found that given Plaintiff's residual functional capacity, age, work experience and education, there are a significant number of jobs that exist in the national economy that she can perform.  (T at 16-17).  Specifically, the ALJ found that Plaintiff could perform work as a mail clerk, messenger and assembly production helper. (T at 17).  Therefore, the ALJ determined that Plaintiff is not under a disability.  (T at 17).

As noted above, the ALJ's decision became the Commissioner's final decision on

May 24, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 5-8).

### 2.    Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers two principal arguments in support of her position.  First, Plaintiff argues that her impairments meet or equal the impairments set forth in §12.04 of the Listings. Second, Plaintiff contends that the ALJ did not give sufficient weight to the opinion of her treating physician.  The Court will address each argument in turn.

### a.    § 12.04 of the Listings

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

When evaluating the severity of mental impairments, the Regulations require application of a "special technique" at the second and third steps of the framework, in addition to the sequential analysis. *Kohler v. Astrue*, 546 F.3d 260, 265-66 (2d Cir.2008) ( citing 20 C.F.R. § 404.1520a). The technique first requires a determination of whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of claimant's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. §

404.1520a(c)(3). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1).

The claimant bears the burden of establishing that his or her impairments match a Listing or are equal in severity to a Listing.  *See Naegele v. Barnhart,* 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. *Sullivan v. Zebley*, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. *Id*.

To have an impairment that meets or medically equals the § 12.04 Listing (Affective Disorders) in Appendix 1 of the Regulations, the claimant's impairment(s) must meet the criteria of paragraphs A and B, or paragraph C of § 12.04.  In this case, Plaintiff argues that she has satisfied all of the requirements under paragraphs A, B, and C of § 12.04 and therefore should have been found to be disabled.

8

i.        Paragraph "A"

A claimant satisfies paragraph A of § 12.04 if he or she has been diagnosed with a "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." § 12.04(A).  Generally, the medical evidence must demonstrate the persistence of certain symptoms of the manic or depressive syndrome, *e.g.* sleep disturbance, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking, and/or thoughts of suicide.

Plaintiff notes that 1998 treatment records from the Clinton County Mental Health Clinic indicate that she complained of "restless sleep" and "depression" (T at 185, 191) and was noted to have "difficulty with abstract thinking" and "psychomotor retardation." (T at 186).   In addition, Plaintiff's treating psychiatrist, Dr. Bruce Kokernot documented complaints of "no energy," "panic attacks," "sleeping all day," being "angry at everybody" (T at 239, 240, 243-45, 372) and clinically observed a "depressed mood," "defeatist" mentality, and an "angry and sullen" mood (T at 238, 240, 244, 373).   Dr. Kokernot diagnosed Plaintiff as suffering from dysthymic disorder, panic disorder, and an avoidant personality disorder (T at 245, 373-74).

Plaintiff also points to the report of Dr. Richard Liotta, a psychologist who performed a consultative examination.  Dr. Liotta diagnosed major depressive disorder (recurrent, severe), panic disorder without agoraphobia, avoidant personality disorder with dependent and passive/aggressive features, and occupational problems. (T at 368).

The ALJ did not specifically indicate whether he found paragraph A of §12.04 to be satisfied.  However, he did appear to analyze the paragraph B criteria, which suggests that the ALJ likely considered the threshold paragraph A analysis to have been met.  In his

9

Brief, the Commissioner argues that Plaintiff does not meet the requirements of §12.04A. However, because the ALJ did not make a clear finding with respect §12.04A and in light of the evidence described above, the Court will assume for purposes of this Report and Recommendation, that Plaintiff satisfied the requirements of §12.04A.

### ii.    Paragraph "B"

In addition to meeting §12.04A, the claimant must also satisfy the "Paragraph B criteria," which "requires the ALJ to rate the degree of the claimant's functional limitation in four specific areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Manning v. Astrue*, No. 07-CV-0327, 2009 WL 604900, at *3 (W.D.N.Y. Mar. 9, 2009).  "Simply stated, in order to satisfy the Paragraph B criteria, the claimant must demonstrate at least two of the following: marked restriction of activities of daily living; or marked difficulties in maintaining social functioning; or marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." *Id.* (citing *Paratore v. Comm'r of Social Sec. Admin.,* 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. February 25, 2008)).

Plaintiff argues that she established the paragraph "B" criteria.  In this regard, she points to Dr. Kokernot's records, which reference excessive sleeping and difficulties in family relationships and overall social functioning. (T at 372, 374).  Dr. Kokernot ultimately concluded that Plaintiff "would, in no way, be able to engage in any competitive employment . . . due to her persistent and intractible [*sic*] mental illness." (T at 369).  Dr. Liotta, the consultative examiner, noted that Plaintiff has "very little social interaction" and seemed "to have difficulty communicating with others." (T at 366).  He found her ability to concentrate "moderately impaired," but noted that her ability to "persist in a productive

10

fashion appears seriously deficient." (T at 367).

The ALJ concluded that the paragraph B criteria had not been satisfied.  The Court finds that the ALJ's decision in this regard was supported by substantial evidence.  With regard to Plaintiff's activities of daily living, the ALJ noted Plaintiff's testimony that she remains in bed throughout the day, relying upon her disabled boyfriend to serve her meals. (T at 14, 52, 55-56).   However, the ALJ discounted Plaintiff's testimony as it was contradicted by testimony offered by her boyfriend to the effect that they occasionally ate meals at a shopping mall.  (T at 14).

Further, Plaintiff's testimony regarding the severity of her limitations with respect to activities of daily living was inconsistent with other portions of her testimony and the record, which indicated that Plaintiff went shopping and to the pharmacy (T at 59), participated in a women's group and martial arts class (T at 245), did the laundry (T at 54, 134), cared for her dog (T at 133), and occasionally drove a car. (T at 134).

Concerning her overall social functioning, Plaintiff complained of problems with family members, including her daughter, but maintained a relationship with a boyfriend and at one time discussed marriage plans. (T at 241).  She organized a party for her daughter and told Dr. Kokernot that her boyfriend "manages to make her smile 2 times a day." (T at 374-75).

As to the ability to maintain concentration, persistence, and pace, the ALJ noted the assessment provided by Brett Hartman, a State Agency consultative psychiatric examiner. Dr. Hartman found Plaintiff's thought processes to be "[c]oherent and goal directed" and concluded that her attention and concentration were only "mildly impaired." (T at 250, 251). He opined that Plaintiff "is able to follow and understand simple directions and instructions"

11

and could "perform a variety of simple and rote tasks." (T at 251).  Further, Dr. Abdul

Hameed, a State Agency medical consultant, reviewed the record evidence and found that

Plaintiff's attention and concentration were "mildly impaired" (T at 255), but that she had

no limitation or only moderate limitation with regard to understanding and memory,

sustained concentration and persistence, social interaction, and adaptation. (T at 253-55).

Dr. Aaron Satloff, a non-examining psychiatrist, reviewed the record, and concluded

that Plaintiff had no restriction with regard to her ability to understand, remember, and carry

out short, simple instructions and only slight restrictions as to her ability to understand,

remember, and carry out detailed instructions and to make judgments on simple work-

related decisions. (T at 355).  Concerning social functioning, Dr. Satloff determined that

Plaintiff had no limitations as to interacting with the public, a supervisor, or co-workers; and

only slight limitations with respect to responding appropriately to work pressure and

changes in work routine. (T at 356).

Plaintiff's argument that she satisfied the paragraph B criteria appears to be based

upon two primary points.  First, she suggests that the ALJ improperly discounted her

testimony regarding the nature and extent of the impairments.  However, "[i]t is the function

of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to

appraise the credibility of witnesses, including the claimant." *Carroll v. Secretary of Health*

*and Human Servs.*, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is

substantial evidence in the record to support the Commissioner's findings, "the court must

uphold the ALJ's decision to discount a claimant's subjective complaints . . . ." *Aponte v.*

*Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted).

The ALJ has the benefit of directly observing a claimant's demeanor and other indicia of

credibility, which thus entitles the ALJ's credibility assessment to deference. *See Tejada v. Apfel*, 167 F.3d 770, 776 (2d Cir.1999) (citing *Pascariello v. Heckler*, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); *see also Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir.1999).   As discussed above, Plaintiff's testimony was contradicted by other testimony (including her own) and evidence in the record.  The ALJ's decision to discount that testimony did not constitute error and was supported by substantial evidence.

With respect to the treating physician issue, as discussed in detail below, the ALJ was not obligated to afford controlling weight to the opinion of Plaintiff's treating psychiatrist in this particular case.

### iii.    Paragraph "C"

Under § 12.04 (C), a claimant would automatically meet the Listing if there was documented evidence of any of the following: "(1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement."

Plaintiff suggests in a single paragraph that she meets the paragraph C criteria, simply noting that her mental illness has persisted for more than a year, her symptoms have not been adequately remediated, and that her treating psychiatrist and consultative examiner opined that the condition prevents her from functioning beyond her current levels. Lacking from Plaintiff's conclusory assertion is any evidence of decompensation, hospitalization, and/or an indication that an increase in mental demands or change in the

13

environment would cause Plaintiff to decompensate.  Accordingly, the Court finds no error

in the ALJ's conclusion that Plaintiff did not satisfy the paragraph C criteria.

### b.  Treating Physician's Rule

Under the "treating physician's rule," the ALJ must give controlling weight to the

treating physician's opinion when the opinion is well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other

substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); *Halloran v. Barnhart*, 362

F.3d 28, 31-32 (2d Cir. 2004); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.2000).[4]

Even if a treating physician's opinion is deemed not to be deserving of controlling

weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this

regard, the ALJ should consider the following factors when determining the proper weight

to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length

of the treatment relationship and the frequency of examination, (2) nature and extent of the

treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the

treating physician, and (6) other factors that are brought to the attention of the court. C.F.R.

§ 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at

134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

Plaintiff argues that the opinion of Dr. Kokernot was entitled to controlling weight,

particularly because it was supported by the assessment of Dr. Liotta, a consultative

examiner.  The ALJ found Dr. Kokernot's opinion to be of "limited probative value" and

---

[4]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20
C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v.
Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

elected not to afford it controlling weight.  (T at 15).  This decision was in accord with the applicable legal standard and supported by substantial evidence.

As discussed above, Dr. Kokernot's assessment was contradicted by Dr. Hartman (a State Agency consultative examiner) and Dr. Satloff (a non-examining State Agency reviewing psychiatrist).  It is well-settled that "the report of a consultative physician can constitute substantial evidence." *Punch v. Barnhart*, No. 01 Civ. 3355, 2002 WL 1033543, at *12 (S.D.N.Y. May 21, 2002).  Indeed, "[u]nder 20 C.F.R. § 404.1527, not only may the reports of consultative or non-examining physicians constitute substantial evidence of disability, they may even override the opinions of treating physicians." *Pease v. Astrue*, 06-CV-0264, 2008 WL 4371779, at *9 (N.D.N.Y. Sep.17, 2008) (*Snell v. Apfel*, 177 F.3d 128, 132-33 (2d Cir.1999); *Cruz v. Barnhart*, 04-CV-9011, 2006 WL 1228581, at *11-14 (S.D.N.Y. May 8, 2006)).

Further, Dr. Kokernot's opinion was contradicted by the record maintained by Dr. Richard Frost, Plaintiff's primary care physician, which indicated that Plaintiff was doing "reasonably well," with a sense of well-being that was "quite good" and improving sleep patterns. (T at 212, 215).

Dr. Kokernot's own notes indicated progress by the Plaintiff and suggested the possibility that her behavior was the result of a lack of motivation.  For example, he noted that Plaintiff explained that "soap operas are the most important thing in her life" (T at 238) and that she enjoyed "sitting out on the swing and watching the birds." (T at 244).

Lastly, Dr. Kokernot's assessment appears largely based upon Plaintiff's subjective complaints.  As discussed above, the ALJ reasonably discounted the credibility of Plaintiff's testimony in that regard based upon a consideration of other testimony and evidence in the

15

record.

In light of the foregoing, the Court finds that the ALJ's decision not to afford controlling weight to Dr. Kokernot's conclusions was not error and was, in fact, supported by substantial evidence.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective evidence and supported opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the evidence, and granted the witness testimony appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 25, 2009

Syracuse, New York

16

**V. ORDERS**

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

17

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge


June 25, 2009
Syracuse, New York